IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRUCE ALLEN LOPES, | CASE NO. 5:23-CV-00674-DCN |
| Plaintiff, | JUDGE DONALD C. NUGENT |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Plaintiff Bruce Lopes challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On March 31, 2023, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry dated Mar. 31, 2023). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

### Procedural Background

Mr. Lopes filed for DIB on July 27, 2020, alleging a disability onset date of April 1, 2018. (Tr. 195). After his claim was denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge. (Tr. 68-73, 75-81, 98-99). Mr. Lopes (represented by counsel) and a vocational expert (VE) testified before the ALJ on December 17, 2021. (Tr. 32-66).

On February 24, 2022, the ALJ found Mr. Lopes not disabled. (Tr. 15-31). The Appeals Council denied Mr. Lopes's request for review, making the hearing decision the final decision of

the Commissioner. (Tr. 1-9; *see* 20 C.F.R. §§ 404.955, 404.981). Mr. Lopes timely filed this action on March 30, 2023. (ECF #1).

FACTUAL BACKGROUND

I.      Personal and Vocational Evidence

Mr. Lopes was 47 years old on his alleged onset date and 51 years old at the administrative hearing. (Tr. 43, 68). He graduated from high school, received certifications in civil engineering and construction inspection, and worked as a construction inspector for Dawson & Associates for 23 years. (Tr. 44-45).

II.     Administrative Hearing

At the hearing, counsel for Mr. Lopes stated he has diabetes, bilateral peripheral neuropathy, and post-surgical knee pain after repair of a right-sided medial meniscus tear. (Tr. 42). He noted Mr. Lopes still has burning pain and hypersensitivity in his feet and diminished gait, strength, and flexibility in the right knee. (*Id.*).

Mr. Lopes testified he lives with his fiancée. (Tr. 44). He stopped working in April 2018 because of the pain in his feet. (Tr. 47). The pain distracts and physically limits his ability to stand and walk, especially on graded land, such that he can not perform his job. (Tr. 43, 47). He is constantly frustrated and irritated and attributes his disposition to dealing with constant pain. (Tr. 55). He does not sleep for longer than three hours at a time and always feels tired. (Tr. 53, 55).

Mr. Lopes described the pain as a constant burning sensation on the bottoms of his feet, rated at 3-4/10, that worsens as the day goes on. (Tr. 48-49). At night, his feet hurt so bad that he feels a constant need to shake his legs. (Tr. 48). The pain causes gait disturbances that lead to knee and back pain. (Tr. 49). Physical activity increases his pain. (Tr. 52). He cannot sit or stand

constantly but his feet are less painful when he is off of them. (*Id.*). It hurts more to walk than to stand still. (Tr. 53). He can stand for 15 minutes at a time before he looks for something to lean on or sits down. (*Id.*). To alleviate the pain in his feet, Mr. Lopes takes hot showers, soaks his feet in Epsom salt, and takes Advil and Lyrica. (Tr. 52).

Mr. Lopes also described intermittent sharp pain in his feet and hands that sometimes leaves a bruised feeling. (Tr. 48). He rates this intermittent pain at 8/10 and states it can freeze him in the middle of whatever he is doing. (Tr. 50). His hands do not hurt as much as his feet, but it hurts to clap his hands and he gets intermittent wrist pain. (Tr. 52).

Mr. Lopes had knee surgery. (Tr. 50). After two rounds of physical therapy, he continues to have knee pain and generalized back pain. (Tr. 51). He uses a cane a couple times a year when the pain gets so bad that he needs assistance to get out of bed. (*Id.*). Mr. Lopes can sit for about 20 to 25 minutes before needing to stretch his knee. (Tr. 54).

Mr. Lopes also has headaches that affect his vision about once a month or every other month. (Tr. 54). When he gets a headache, he takes an Advil every hour until the pain is gone. (*Id.*).

The VE testified that a person of Mr. Lopes's age, education, and experience, with the functional limitations described in the ALJ's RFC determination, could not perform his past relevant work as a construction inspector. (Tr. 61). The VE identified light exertion, unskilled positions that the hypothetical person could perform, including router, marker, and office helper. (Tr. 62). If the standing/walking capacity was reduced to four hours a day, the number of marker and office helper positions is eroded by 50%. (*Id.*). The VE also testified a person cannot maintain

work if off task for 15 percent or more of the workday or absent two or more days a month. (Tr. 63).

## III.  Relevant Medical Evidence

On July 25, 2018, Mr. Lopes met with Stephanie Lovett, C.N.P., to establish care. (Tr. 287). He complained of chronic numbness and tingling in both feet and decreased circulation in his legs. (*Id.*). He endorsed pain, including a burning sensation in his feet, fatigue, and headaches. (Tr. 287-88). NP Lovett ordered labs, lower extremity EMG testing, and ultrasounds for vascular evaluation. (Tr. 289-90).

Ultrasound testing from August 13, 2018 revealed no evidence of arterial insufficiency or stenosis in either leg. (Tr. 317, 320).

On September 4, 2018, Mr. Lopes met with Jillian Berkshire, A.P.R.N., C.N.P., at the NeuroCare Center for evaluation of bilateral foot numbness. (Tr. 333-38). He endorsed constant burning pain, some cramping, and needing to move his legs due to pain. (Tr. 333). He described the pain as better in the morning but did not have trouble balancing. (*Id.*). Mr. Lopes also endorsed headaches, back pain, joint paint, and muscle weakness. (Tr. 335).

Physical examination revealed reduced Achilles tendon reflexes and reduced sensation to pinprick and vibration in the feet and toes; otherwise, Mr. Lopes had normal muscle strength without atrophy, normal tone, normal coordination in the upper and lower extremities, and normal gait and station. (Tr. 335-36). NP Berkshire noted "[s]ymptoms and exam are very suggestive of sensory neuropathy, large fiber vs small fiber. Will see if EMG/nerve conduction study confirms but even if normal, this is still likely a small fiber neuropathy." (Tr. 336). She prescribed nortriptyline for neuropathic pain. (*Id.*).

4

On October 1, 2018, a nerve conduction study of the right upper and right lower extremity weas normal except for "right sural sensory demonstrated reduced amplitude with normal latency. Right superficial peroneal sensory was absent." (Tr. 339). EMG was normal. (*Id.*). The interpreting physician concluded there is electrodiagnostic evidence of a mild sensory neuropathy. (*Id.*).

On November 9, 2018, Mr. Lopes met with NP Berkshire for a follow-up appointment. (Tr. 299-303). There, he continued to complain of a constant burning sensation on the bottoms of his feet. (Tr. 299). He explained that being on his bare feet aggravated the condition, whereas constant compression and hot water help improve the pain. (*Id.*). He reported not having relief with nortriptyline, and explained it caused side effects including constipation and morning drowsiness. (*Id.*). Mr. Lopes also endorsed headaches, back and neck pain, and joint pain. (Tr. 300). NP Berkshire noted the EMG revealed mild sensory neuropathy. (Tr. 299). Physical examination revealed normal gait and station but decreased tactile sensation in both feet. (Tr. 301). NP Berkshire ordered lab work and prescribed Lyrica. (Tr. 302).

On January 13, 2021, Mr. Lopes returned to NP Lovett's office, requesting a referral for neuropathy and complaining of left elbow and right knee pain, continued tingling in his feet, and restless legs. (Tr. 463). On physical examination, Mr. Lopes had normal range of motion in the left elbow with some tenderness with pronation against resistance and to palpation, and normal range of motion in the right knee without tenderness, crepitus, effusion, warmth, or erythema. (Tr. 465). Provocative testing in the knee was negative and Mr. Lopes could bear weight and ambulate without difficulty or hesitancy. (*Id.*). At Mr. Lopes's request, NP Lovett referred him to a vascular surgeon, though she did not believe it necessary. (*Id.*). NP Lovett also referred Mr. Lopes for physical therapy evaluation of his right knee and occupational therapy evaluation for his left

elbow. (Tr. 463). She recommended Mr. Lopes see pain management, but he "adamantly" declined. (Tr. 464).

On January 18, 2021, Mr. Lopes met with thoracic and vascular surgeon Lawrence Schmetterer, M.D. (Tr. 467-68). Dr. Schmetterer felt Mr. Lopes had peripheral neuropathy of unknown etiology without evidence of clinically significant peripheral arterial occlusive disease. (Tr. 468). He ordered a comprehensive venous ultrasound to rule out venous insufficiency. (*Id.*).

On February 15, 2021, Dr. Schmetterer determined, based on the normal ultrasound results, that Mr. Lopes did not have arterial or venous disease and advised him to follow up with a neurologist regarding neuropathy. (Tr. 487, 490).

In January and February 2021, Mr. Lopes attended eight occupational therapy sessions for his left elbow and seven physical therapy sessions for his right knee. (See Tr. 387, 392, 396, 406, 558, 575, 579, 583, 587, 755, 759, 775, 778, 839, 849).

On March 17, 2021, Mr. Lopes met with NP Lovett and reported he completed physical and occupational therapy without much improvement. (Tr. 956). He expressed concern about the neuropathy and fatigue. (*Id.*). Bloodwork confirmed Mr. Lopes had diabetes mellitus with hyperglycemia. (*Id.*). NP Lovett discussed the long- and short-term effects of uncontrolled blood sugars, but Mr. Lopes declined medication. (*Id.*). She referred him to a diabetes educator and nutritionist and ordered right knee and left elbow X-rays. (*Id.*). Right knee X-rays revealed minimal osteophyte formation of the medial femoral condyle without acute fracture or dislocation. (Tr. 930). Left elbow X-rays showed no acute fracture or dislocation. (Tr. 931).

On March 25, 2021, Mr. Lopes met with Kristen Henry, D.P.M., for toenail care. (Tr. 985). He admitted to being borderline diabetic. (*Id.*). Dr. Henry observed Mr. Lopes ambulating

6

without distress and noted a normal physical examination, including intact light touch to the plantar feet bilaterally. (Tr. 986).

On April 27, 2021, an MRI of the right knee showed a small osteochondral defect/cortical depression fracture at the anterior medial margin of the medial femoral condyle with mild to moderate surrounding edema, significant abnormal architecture of the medial meniscus, and mild chronic strain of the lateral collateral ligament. (Tr. 987-88).

On May 13, 2021, Mr. Lopes underwent right knee arthroscopy with partial medial meniscectomy. (Tr. 1010).

On May 27, 2021, Mr. Lopes met with Dr. Henry for toenail care. (Tr. 983). Dr. Henry observed Mr. Lopes ambulating without distress and noted a normal physical examination, including intact light touch to the plantar feet bilaterally. (Tr. 984).

On June 7, 2021, Mr. Lopes attended a physical therapy evaluation during which he described continued knee pain, rated 5/10, post-surgery and difficulty using stairs and reported limping for several weeks. (Tr. 1123-24). Gait analysis showed decreased cadence, stance time, heel strike, and toe push off. (Tr. 1124). Right knee examination revealed tenderness in the medial and superior aspects, tenderness to deep patellar tendon palpation, and clicking. (Tr. 1125).

He attended physical therapy sessions on June 17, 22, and 28 and July 1, 6, 8, 12, 15, and 27, 2021. (Tr. 1128-63). In July, Mr. Lopes reported overall less pain, rated 3/10, and ability to navigate steps normally. (Tr. 1137). At his next session, he reported slightly increased 4/10 pain. (Tr. 1128). Though he always complied with masking mandates before this session, he refused to wear one and was treated in a semi-private room. (Tr. 1130). As a result, Mr. Lopes forewent the exercises that could not be completed in that room. (*Id*.). He was discharged on August 24, 2021

7

for not following up with physical therapy after this session. (Tr. 1125). Mr. Lopes did not seek further treatment for right knee pain.

On August 30, 2021, Mr. Lopes was transferred from NP Lovett's care to Carl Fry, D.O. (Tr. 1165). There, Mr. Lopes reported constant neuropathy in his feet. (*Id.*). Physical examination revealed a normal gait. (*Id.*). Dr. Fry noted the neuropathy was consistent with diabetes mellitus, but also noted the neuropathy symptoms long preceded the diabetes diagnosis. (*Id.*). He prescribed a low dose of Lyrica for neuropathy and ordered lab work. (*Id.*).

On October 14, 2021, Mr. Lopes met with Dr. Fry and reported chronic fatigue, poor sleep, and feeling tired on awakening. (Tr. 1176). He did not have significant improvement in his feet with Lyrica but was agreeable to increasing the dose. (*Id.*). Dr. Fry increased Lyrica and advised Mr. Lopes to get a polysomnogram to evaluate his sleep issues. (*Id.*).

On December 11, 2021, Mr. Lopes underwent a polysomnogram with EEG monitoring that showed mild obstructive sleep apnea and severe periodic limb movement disorder. (Tr. 1164).

## IV.    Medical Opinions

On December 17, 2020, Mr. Lopes presented for a consultative examination during which he reported a constant burning pain in his feet made worse with standing and walking. (Tr. 341-49). He also described occasional sharp pain in his feet. (*Id.*). Deidre Parsley, D.O., performed the examination and noted the following:

- Mr. Lopes walks with a normal gait, does not require a handheld assistive device, appears stable at station, and appears comfortable in supine and sitting positions.

- Sensory modalities reveal decreased sensation of the right plantar foot.

- Mr. Lopes can stand on each leg with a little imbalance, can walk on heels and on toes without difficulty, but had difficulty performing tandem gait.

8

(Tr. 342-43). Dr. Parsley determined that Mr. Lopes's ability to perform work-related activities, including standing, sitting, bending, stooping, walking, squatting, pushing, pulling, lifting, carrying, and traveling "appears to be at least mild[ly] to moderately impaired." (Tr. 343).

On December 29, 2020, State agency reviewing physician Michael Lehv, M.D., reviewed Mr. Lopes's medical records and determined he can lift and carry 50 pounds occasionally, 25 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday; never climb ladders, ropes, or scaffolds; and must avoid all exposure to hazards such as machinery and heights. (Tr. 70-71).

On May 8, 2021, Mr. Lopes met with Bilal Mahmood, M.D., for a consultative examination. (Tr. 960). There, he complained of peripheral neuropathy of the bilateral feet that causes constant pain, rated 6/10, wakes him at night, and makes it difficult to stand for prolonged periods. (Tr. 960). He explained that a hot shower is the most effective treatment for the pain, but the relief is temporary. (*Id.*). On visual examination, Dr. Mahmood observed Mr. Lopes ambulating well without difficulty and without a limp and appeared comfortable while transitioning between sitting and an upright position. (Tr. 961). Except for diminished sensation in the bilateral feet, Mr. Lopes's physical examination was normal. (*Id.*). He could ambulate without an assistive device, walk on his heels and toes, stand on one foot, and hop on one foot bilaterally. (Tr. 961-62). Dr. Mahmood determined Mr. Lopes has severe peripheral neuropathy and is at least mildly impaired in his ability to perform work-related activities including bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, and pushing and pulling objects. (Tr. 962).

On May 11, 2021, State agency reviewing physician Gary Hinzman, M.D., reviewed Mr. Lopes's medical records and determined he can lift and carry 20 pounds occasionally, 10 pounds frequently; frequently push/pull with the bilateral lower extremities; stand and/or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch, but never crawl; and must avoid all exposure to unprotected heights and dangerous machinery. (Tr. 78-80).

## V.  Other Evidence

On August 12, 2020, Mr. Lopes completed a pain questionnaire and endorsed constant burning, pins-and-needles pain and intermittent sharp pain in the feet, legs, hands, and wrists that is moderate to severe. (Tr. 228). Sitting and standing for long periods of time increase his pain. (*Id.*). The pain makes it difficult to perform many activities, including climbing stairs, doing chores, and driving for extended periods of time. (Tr. 229). The pain makes him irritable and makes it difficult to concentrate on tasks without distraction or focus for any length of time. (*Id.*). Hot showers and baths provide minimal and temporary pain relief, lasting 45 to 60 minutes. (*Id.*).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner

follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant

is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One

through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to

establish whether the claimant has the residual functional capacity (RFC) to perform available

work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity,

age, education, and past work experience to determine if the claimant could perform other work.

*Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work,

and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-

(f); *see also Walters*, 127 F.3d at 529.

### THE ALJ'S DECISION

The ALJ issued an unfavorable decision on February 24, 2022. (Tr. 14-31). At Step One,

the ALJ determined Mr. Lopes meets the insured status requirements of the Social Security Act

through December 31, 2023 and has not engaged in substantial gainful activity since April 1,

2018, the alleged onset date. (Tr. 20-21). At Step Two, she determined Mr. Lopes has severe

impairments of sensory neuropathy of the lower extremities; degenerative joint disease of the right knee; complex meniscus tear in the right knee, status post May 2021 surgery; diabetes; periodic limb movement sleep disorder; and obesity. (Tr. 21). At Step Three, the ALJ determined Mr. Lopes does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (Tr. 21). She specifically analyzed Listings 1.18 (abnormality of a major joint) and 11.14 (peripheral neuropathy), found in 20 C.F.R. Part 404, Subpart P, Appendix 1, and the social security rulings pertaining to diabetes mellitus (SSR 14-2p) and obesity (SSR 19-2p). (Tr. 21-22). The ALJ reviewed Mr. Lopes's medical records, hearing testimony, and medical opinions to conclude he remains capable of light work with additional limitations including:

> A sit/stand option allowing a brief change of position for 1-2 minutes every 30 minutes; no climbing, balancing, crouching, or crawling, as those terms are defined in the DOT/SCO; no more than occasional kneeling, as that is defined in the DOT/SCO; and no exposure to hazards such as dangerous moving machinery or unprotected heights.

(Tr. 22). Justifying the RFC, the ALJ stated:

> The evidence of record supports limitations from the claimant's neuropathy and knee condition, just not to the extent alleged by the claimant. The claimant's examinations show normal gait, intact strength, intact reflexes, and, at times, even intact sensation. His knee condition improved significantly after surgery and physical therapy[.] [T]he claimant golfs, hikes, rides a motorcycle and carries firewood, albeit at a less frequent and less intense level than previously. Even when all of his conditions are considered in combination with his obesity, the undersigned finds that a reduction to light work with a sit/stand option, no climbing, balancing, crawling, or crouching, no more than occasional kneeling and no exposure to hazards is sufficient to accommodate his impairments. No other limitations are warranted.

(Tr. 24). At Step Four, the ALJ determined Mr. Lopes could not perform his past relevant work as a construction inspector. (Tr. 25). At Step Five, the ALJ determined jobs exist in significant numbers in the national economy that the claimant can perform and concluded Mr. Lopes was not disabled. (*Id.*).

12

STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court

interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11 13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## DISCUSSION

Mr. Lopes raises three issues for review. First, he maintains the ALJ erred at Step Three "when she failed to comply with the relevant SSRs (17-2p, 19-2p, and 14-2p) and find that the combination of plaintiff's sensory neuropathy, diabetes, obesity, and knee problems equaled a listing." (ECF #6 at PageID 1212). Second, he argues the ALJ's determination that he could stand/walk for 6 hours is not supported by substantial evidence. (*Id.* at PageID 1218). Third, he asserts that when the ALJ evaluated his statements concerning the intensity, persistence, and

14

limiting effects of his symptoms, the ALJ did not properly apply the criteria of SSR 16-3p. (*Id.* at PageID 1219).

The Commissioner responds that Mr. Lopes did not establish the presence of an impairment or combination of impairments that could medically equal a listing and substantial evidence supports the ALJ's RFC assessment, including her findings related to standing/walking and the evaluation of his statements about the limiting effects of his symptoms. (ECF #9 at PageID1237, 1240, 1242). I agree with the Commissioner and therefore recommend the District Court **AFFIRM** the Commissioner's decision in full.

**A. The ALJ properly evaluated whether Mr. Lopes's impairments met or medically equaled a listed impairment.**

At Step Three, a claimant will be found disabled if his impairment meets or equals one of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.* 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes those impairments the Commissioner considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled and entitled to benefits. *Id.* The claimant carries the burden of establishing that claimed impairments meet or are medically equivalent to a listed impairment. *See, e.g., Lett v. Colvin,* No. 1:13 CV 2517, 2015 WL 853425, at *15 (N.D. Ohio Feb. 26, 2015). An ALJ will find that an impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a); *see also Land v. Sec'y of Health & Hum. Servs.,* 814 F.2d 241, 245 (6th Cir. 1986) (noting that an impairment or combination of impairments is medically

15

equivalent to a listed impairment if the symptoms, signs, and laboratory findings are at least equal in severity and duration to the listed impairments). The ALJ must consider all evidence in the case record about the impairments and their effects on the claimant that is relevant to the finding of medical equivalence. 20 C.F.R. § 404.1526(c).

"A claimant can demonstrate that []he is disabled because h[is] impairments are equivalent to a listed impairment by presenting 'medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Foster v. Halter,* 279 F.3d 348, 355 (6th Cir. 2001) (quoting *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990)). To make a finding of medical equivalence, the record *must* contain one of the following:

1. A prior administrative medical finding from a medical or psychiatric consultant from the initial or reconsideration adjudication levels supporting the medical equivalence finding; or

2. Medical expert evidence, which may include testimony or written response to interrogatories, obtained at the hearing level supporting the medical equivalence finding; or

3. A report from the Appeals Council's medical support staff supporting the medical equivalence finding.

SSR 17-2p at *3.

If the ALJ believes the evidence does not reasonably support a finding that the individual's impairments medically equal a listed impairment, the regulations do not require the ALJ obtain medical expert evidence or medical support staff input prior to making a Step Three finding that the individual's impairments do not medically equal a listed impairment. *Id.* at *4. Similarly, if the ALJ believes the evidence does not reasonably support a medical equivalence finding, the ALJ is not required to articulate specific evidence supporting a finding that the individual's impairment does not medically equal a listed impairment. *Id.* Generally, a statement that the individual's

impairments do not medically equal a listed impairment constitutes sufficient articulation of this finding. *Id.* The ALJ's articulation of the reasons why the individual is not disabled at a later step of the sequential evaluation process will provide rationale sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at Step Three. *Id.*

Here, the record lacks a prior administrative medical finding, a medical expert report, or a report from the Appeals Council's medical support staff that supports a finding of medical equivalence. At Step Three, the ALJ first stated Mr. Lopes "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" and specifically evaluated whether Mr. Lopes's neuropathy met or equaled listing 11.14 (peripheral neuropathy), as the SSR directs. SSR 14-2p at *4 ("Diabetic neuropathy is permanent nerve damage. The most common types of diabetic neuropathy are peripheral and autonomic. It can affect every organ system in the body and produce abnormal function or loss of sensation in the affected nerve area distribution. See 11.00 . . . for guidance on evaluating neurological impairments."). To meet listing 11.14, a claimant must show (A) disorganized motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or (B) a marked limitation in physical functioning and a marked limitation in one of the four areas of mental functioning (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; adapting or managing oneself). 20 CFR Part 404, Subpart P, Appendix 1, Listing 11.14. The ALJ reasonably determined the medical evidence does not show an extreme limitation in Mr. Lopes's ability to stand from a seated position, balance

while standing or walking, or use the upper extremities, and does not show a marked limitation in physical functioning. (Tr. 21).

Mr. Lopes claims the ALJ "failed to consider [his] diabetes with neuropathy according to [SSR] 14-2p." (ECF #6 at PageID 1214). Contrary to that assertion, the ALJ considered diabetes and neuropathy throughout the sequential evaluation:

> The claimant is diagnosed with diabetes with hyperglycemia. His laboratory findings show that he has had somewhat elevated blood sugar levels, with recent testing showed A1c levels of 6.6. The claimant has met with a nutritionist and treatment shows that the claimant's blood sugar levels improved with diet changes, with a reduced A1c to 5.7% in October 2021. The claimant has received only conservative treatment for his diabetes symptoms, and there is no plan for more aggressive or alternative modalities.
>
> The claimant has, however, had a complication from his diabetes in the form of diabetic neuropathy of his feet. EMG testing in 2018 confirmed mild sensory neuropathy in the lower extremities. On some examinations, the claimant has had decreased tactile sensation in the bilateral feet. Others show decreased sensation in only the right foot, while other examinations show normal gait, muscle tone, coordination, motor strength, and reflexes with no loss of sensation, including a May 2021 podiatry visit.

(Tr. 23). This discussion acknowledges Mr. Lopes's conditions and points to other substantial medical evidence showing how the conditions do not appear to limit his functionality, including normal gait and coordination, normal muscle strength and tone, and normal reflexes, which provides sufficient rationale for this Court to determine the basis for finding no medical equivalence at Step Three. *See* SSR 14-2p at *4.

Next, Mr. Lopes claims the ALJ did not "account for the combination of [his] obesity and acknowledged related problems listed in [SSR 19-2p]." (ECF #6 at PageID 1215). Again, contrary to this assertion, the ALJ explicitly invoked SSR 19-2p, which offers guidance on evaluating cases

involving obesity, and considered the combined impact of all impairments. At Step Three, the ALJ

stated:

> Social Security Ruling 19-2p requires consideration of obesity in determining whether a claimant has medically determinable impairments that meet or medically equal a listing. The undersigned has considered the claimant's obesity but finds that this impairment alone does not medically equal any listed impairment. Further, noting that obesity may increase the severity of co-existing or related impairments, the undersigned has specifically considered the combined impact of all the claimant's impairments including obesity, but finds the claimant's impairments in combination do not meet or medically equal the criteria for any listed impairment.

(Tr. 22). And later in the sequential evaluation, the ALJ determined:

> This claimant has also had treatment for a knee condition. The claimant sought treatment for persistent right knee pain in March 2021. MRI in April 2021 revealed a small osteochondral defect/cortical compression fracture, a complex tear of the medial meniscus, thinning of the lateral meniscus, and a mild strain of the lateral collateral ligament. He was referred to orthopedics and reported there that he had right knee pain a year before that went away, but it had returned. He noted that he has difficulty playing golf because of all the walking that it required. On exam, the doctor noted clicking on motion, very positive McMurray's test, and pain on extension. Surgery was recommended on his right knee, and a partial medial meniscectomy was performed on My 13, 2021. He attended physical therapy after his surgery. By August 2021, he was reporting improvement in his pain down to a 3/10 and that he was able to negotiate steps normally. One of the goals listed in the physical therapy records was for the claimant to be able to return to hiking and golfing. There is no return visit to orthopedics in the record since his physical therapy ended.
>
> Treatment records also show the claimant was obese, showing a body mass index (BMI) of 39 during the relevant period. Although the record indicates weight loss was discussed with the claimant to mitigate his period limb movement disorder symptoms, the record contains no objective findings or subjective complaints related to the claimant's obesity. Instead, most examinations show normal range of motion of the extremities, normal strength, intact sensation, and normal reflexes.

(Tr. 23-24). And finally, the ALJ concluded:

> The evidence of record supports limitations from the claimant's neuropathy and knee condition, just not to the extent alleged by the claimant. The claimant's examinations show normal gait, intact strength, intact reflexes, and, at times, even intact sensation. His knee condition improved significantly after surgery and physical

> therapy[.] [T]he claimant golfs, hikes, rides a motorcycle and carries firewood, albeit at a less frequent and less intense level than previously. Even when all of his conditions are considered in combination with his obesity, the undersigned finds that a reduction to light work with a sit/stand option, no climbing, balancing, crawling, or crouching, no more than occasional kneeling and no exposure to hazards is sufficient to accommodate his impairments. No other limitations are warranted.

(Tr. 24). Here, the ALJ's discussion at later steps of the sequential evaluation sheds sufficient light on the ALJ's rationale for concluding that the combination of his impairments, including obesity, do not medically equal a listed impairment.

Last, Mr. Lopes asserts his conditions in combination equaled the listings based on a combination of his symptoms (ECF #6 at PageID 1216) but does not articulate how the evidence is equal in severity to all the criteria of a listing. As such, Mr. Lopes has failed to meet his burden of proof. *See Foster,* 279 F.3d at 355. The ALJ stated Mr. Lopes's impairments do not medically equal a listed impairment and later articulated reasons why he is not disabled; the discussion at later steps of the sequential evaluation provides sufficient rationale for the ALJ's conclusion at Step Three. That rationale, based on objective medical evidence, improvement after surgery, and daily activities, constitutes substantial evidence supporting the ALJ's conclusion. Accordingly, I recommend the District Court decline to remand on this basis.

**B.    The RFC is supported by substantial evidence.**

Mr. Lopes's second and third arguments relate to the ALJ's RFC assessment.

First, Mr. Lopes argues sensory neuropathy and a history of a torn meniscus in the right knee renders the ALJ's determination that he can stand and/or walk for 6 hours in an 8-hour workday not supported by substantial evidence and contrary to evidence documenting his severe sensory neuropathy. (ECF #6 at PageID 1218). He claims the ALJ "disregarded any evidence which would have precluded [him] from engaging in work at the light level of exertion" (*id.*) but does not

clarify what evidence the ALJ did not consider. Next, Mr. Lopes asserts the ALJ "failed to account for disabling pain which would interfere with the ability to sustain work activity" when considering his statements pertaining to the intensity, persistence, and limiting effects of his conditions. (*Id.* at PageID 1222).

A claimant's RFC is defined as the most a claimant can still do despite the physical and mental limitations resulting from her impairments. 20 C.F.R. § 404.1545(a). The ALJ alone is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546(c). The RFC must be based on all relevant evidence in the record, including medical evidence, medical reports and opinions, the claimant's testimony, and statements the claimant made to medical providers. 20 C.F.R. § 404.1545(a); *see also Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, *2 (N.D. Ohio Mar. 2, 2010).

The ALJ follows a two-step process for evaluating an individual's symptoms. First, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, the ALJ evaluates the intensity and persistence of the individual's symptoms and determines the extent to which they limit the individual's ability to perform work-related activities. *Id.* At this stage, the ALJ considers the entire case record, including the objective medical evidence; the individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case. *Id.* In addition, the ALJ uses the factors set forth in 20 C.F.R. § 404.1529(c)(3) to evaluate the individual's statements:

      1.     A claimant's daily activities;

2.      The location, duration, frequency, and intensity of pain or other symptoms;

3.      Factors that precipitate and aggravate the symptoms;

4.      The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.      Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;

6.      Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and

7.      Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ need not analyze all seven factors, only those germane to the alleged symptoms. *See, e.g.,*

*Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) ("The ALJ need not

analyze all seven factors identified in the regulation but should provide enough assessment to

assure a reviewing court that he or she considered all relevant evidence.").

The ALJ is not required to accept the claimant's subjective complaints and may discount

subjective testimony when the ALJ finds those complaints are inconsistent with objective medical

and other evidence. *Jones*, 336 F.3d at 475-76. The ALJ may not reject an individual's statements

about her symptoms solely because the objective medical evidence does not substantiate the degree

of impairment-related symptoms alleged but must carefully consider other evidence in the record.

*See* 20 C.F.R. § 404.1529(c)(2); *see also* SSR 16-3p at *6.

The ALJ's decision must include "specific reasons for the weight given to the individual's

symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess

how the adjudicator evaluated the individual's symptoms." *Id.* at *10. The ALJ need not use any

"magic words," so long as it is clear from the decision as a whole why the ALJ reached a specific

conclusion. *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-CV-01617, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021).

An ALJ's determination of subjective evidence receives great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). Absent compelling reason, this Court may not disturb the ALJ's analysis of the claimant's subjective complaints, or the conclusions drawn from it. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019). "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]" *Ulman*, 693 F.3d at 713-14.

Mr. Lopes claims the ALJ "failed to articulate any supportable rationale" for finding his statements not entirely consistent with the medical evidence and asserts that his testimony, the medical evidence, and statements he made to his providers show that pain "interfered with his ability to ambulate on a sustained on a sustained basis and maintain attention and concentration necessary to complete work on a sustained and full-time basis." (ECF #6 at PageID 1222-23).

Here, the ALJ acknowledged Mr. Lopes's complaints of pain and other symptoms:

> At the hearing, the claimant testified that he is unable to work due to foot pain and right knee pain. He testified that he feels a constant burning sensation on the bottom of both feet and sharp pains in different areas of his feet. The claimant reported that he has difficulty walking and climbing stairs due to his back and knee pain. He further reported that he completed two rounds of physical therapy for his right knee but still experiences pain and decreased range of motion. The claimant testified that he has difficulty standing and sitting for extended periods due to his pain, stating that he can stand for approximately 15 minutes at a time and sit for approximately 20-25 minutes at a time. He further testified that he experiences fatigue and lack of sleep because of his pain.

> * * *

> He testified that he stopped working because of the pain in his feet and the distraction that it caused while he was trying to work. He stated that he felt that he

23

could not do his work effectively because there is such a high attention to detail and such dire potential consequences if he missed something.

(Tr. 23). Later, the ALJ considered the consistency of Mr. Lopes's reported symptoms with the objective medical and other evidence of record and determined his conditions pose functional limitations, but not to the extent he alleged. (Tr. 24). In coming to this conclusion, the ALJ relied on factors germane to the evaluation, including the physical examination findings showing normal gait, intact strength, and intact reflexes; conservative treatment for diabetes; physical therapy for his right knee, resulting in overall less pain; the lack of treatment for his right knee after physical therapy; and his activities, including golfing, hiking, riding a motorcycle, and carrying firewood. (Tr. 23, 24). The assessment of Mr. Lopes's symptoms and the conclusions drawn from that assessment are reasonable and the ALJ has cited substantial, legitimate evidence to support the RFC. Therefore, I decline to recommend the District Court remand on this basis.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits.

Dated: February 13, 2024

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the**

24

proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).